**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 2:14-CV-0156-VEB

KIMYATTA R. CLOUSE,

                    Plaintiff,        DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

## I. INTRODUCTION

In April of 2011, Plaintiff Kimyatta R. Clouse applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the application.

Plaintiff, represented by Joseph Linehan, Esq., Dana Madsen Law Office, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 6).

On March 2, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on April 22, 2011. (T at 176-82).[1]  The application was denied initially and on reconsideration and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On December 17, 2012, a hearing was held before ALJ Gene Duncan. (T at 40).  Plaintiff appeared with her attorney and testified. (T at 44-49, 66-75).  The ALJ also received testimony from Polly Peterson, a vocational expert (T at 77-87), and Dr. Stephen Rubin, a psychological expert (T at 50-65).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

On January 16, 2013, the ALJ issued a written decision denying the application and finding that Plaintiff was not entitled to SSI benefits. (T at 19-38). The ALJ's decision became the Commissioner's final decision on April 2, 2014, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

On May 27, 2014, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 4). The Commissioner interposed an Answer on August 4, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on January 12, 2015. (Docket No. 14). The Commissioner moved for summary judgment on February 23, 2015. (Docket No. 16). Plaintiff filed a reply brief on March 16, 2015. (Docket No. 18).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

## III. DISCUSSION

**A.    Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2)  a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.     Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.   Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 22, 2011 (the application date) and had never engaged in substantial gainful activity.   The ALJ found that Plaintiff's dysthymia disorder, personality disorder, and morbid obesity were "severe" impairments under the Act. (Tr. 24).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24-26).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 416.967 (b), with the following limitations: occasional postural movements; no balancing, crawling, or climbing ladders; must avoid heights, workplace hazards, and extreme heat; limited to superficial contact with the public and must work independently; needs a flexible and tolerant supervisor who sets goals (but not quotas) and provides hands-on training for work-setting changes; only occasional supervision of work product; no direct access to drugs or alcohol; no responsibility for the safety of others; no high stress work and no intense interaction with others or executive decisions; must be

allowed to be off task 5% of the workday in small increments and be allowed to move at low average pace. (T at 26-27).

The ALJ noted that Plaintiff had no past relevant work. (T at 33). Considering Plaintiff's age (23 on the application date), education (limited), work experience (no substantial gainful activity), and residual functional capacity (light work, with limitations outlined above), the ALJ determined that there were jobs that exist in significant numbers that Plaintiff can perform. (T at 33-34). As such, the ALJ concluded that Plaintiff was not disabled, as defined under the Social Security Act, between April 22, 2011 (the application date) and January 16, 2013 (the date of the decision) and was therefore not entitled to benefits. (Tr. 34). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## D.    Plaintiff's Argument

Plaintiff contends that the Commissioner's decision should be reversed. In particular, Plaintiff argues that the ALJ did not appropriately assess the medical opinions of record.

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB

## IV. ANALYSIS

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995,

1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

"The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

In this case, Plaintiff contends that she is more limited from a psychological standpoint than the ALJ's RFC assessment indicates and that the ALJ did not properly weigh the medical opinion evidence.  In support of this argument, Plaintiff cites the following evidence:

Dr. Kayleen Islam-Zwart, an examining psychologist, completed a psychological evaluation in September of 2009.  She diagnosed bereavement (rule/out alcohol abuse), borderline intellectual functioning, and personality disorder NOS. (T at 378).  Dr. Islam-Zwart assessed marked limitations with regard to Plaintiff's ability to understand, remember, and follow complex instructions; relate appropriately to co-workers and supervisors; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior in a work setting. (T at 379).  She described Plaintiff as "[s]eriously disturbed." (T at 380).  Dr. Islam-Zwart assigned a Global Assessment of Functioning ("GAF")[2] score of 51 (T at 386), which is indicative of moderate

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB

symptoms or difficulty in social, occupational or educational functioning. *See Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at \*19 n.2 (E.D.Wa Jan. 7, 2013).

Dr. Jay Toews, an examining psychiatrist, completed an evaluation in December of 2010.  He diagnosed adjustment disorder with depressed mood, learning disorder by history, low average to high borderline intellectual level, and immature personality.  (T at 399).  Dr. Toews assigned a GAF score of 60-64, which is indicative of moderate to mild difficulties. *See Sandburg v. Astrue*, No. CV-10-219, 2012 U.S. Dist. LEXIS 2018, at \*22 (E.D.Wa. Jan. 6, 2012).

Dr. Samantha Chandler, an examining psychologist, completed a psychological diagnostic evaluation in June of 2011.  She diagnosed alcohol and cannabis abuse, early full remission (by self-report); borderline intellectual functioning (by history); and borderline and dependent features. (T at 464).  Dr. Chandler assigned a GAF score of 59, which is indicative of moderate symptoms. (T at 464).  She described Plaintiff's judgment and insight as "poor to fair" and her prognosis as "guarded." (T at 465).

Dr. W. Scott Mabee, an examining psychologist, completed a psychological evaluation in March of 2012.  He diagnosed dysthymic disorder (early onset); learning disorder (by history); and personality disorder NOS with Cluster B features.

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB

(T at 480). Dr. Mabee assigned a GAF score of 53, which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. (T at 480). He reported that Plaintiff was "impulsive and has mood swings, is easily defensive, and takes things too personally." (T at 481). Dr. Mabee assessed moderate limitations with regard to Plaintiff's ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday or workweek, and perform at a consistent pace. (T at 482). He also opined that Plaintiff would have moderate limitations with respect to interacting appropriately with the public, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers and peers, maintaining socially appropriate behavior, and setting realistic goals or making plans independently of others. (T at 483).

As noted above, the ALJ determined that Plaintiff retained the RFC to perform the mental demands of light work, with significant non-exertional limitations. (T at 26-27).

For the following reasons, this Court finds the ALJ's assessment supported by substantial evidence. Dr. Toews concluded that Plaintiff was cognitively intact, with unimpaired attention, concentration, and memory. (T at 399). He opined that she

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB

had no mood, affective or cognitive barriers to employment and found that she could remember at least simple multi-step instructions and interact with coworkers and supervisors. (T at 399). Dr. Toews concluded that Plaintiff could perform at a normal pace and complete work tasks. (T at 399). The ALJ afforded great weight to the opinion of this examining psychiatrist. (T at 31).

Dr. Stephen Rubin, a clinical psychologist, reviewed the medical record and testified at the administrative hearing. He testified that there "clearly are some limitations cognitively," but he did not believe that Plaintiff was "so disabled that she is unable to work . . . ." (T at 52-53). He opined that Plaintiff has "very significant problems," including "personality disorder issues," but found them to be "not untreatable and not completely incapacitating." (T at 53). Dr. Rubin believed Plaintiff was "capable of a very simple job and performing many jobs in our society," although he recognized that Plaintiff had difficulty with motivation. (T at 53). He opined that Plaintiff could learn and obtain a job situation that was "not too stressful" and required only "limited interaction with the public." (T at 54, 65). Dr. Rubin was subjected to extensive cross-examination by Plaintiff's counsel during the hearing.

The ALJ afforded great weight to Dr. Rubin's opinion. (T at 30). "[A]n ALJ may give greater weight to the opinion of a non-examining expert who testifies at a

hearing subject to cross-examination." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Secretary of H.H.S.*, 870 F.2d 742, 744 (1st Cir. 1989)); *see also Moody v. Astrue*, No CV-10-161, 2011 U.S. Dist. LEXIS 125165, at *22-23 (E.D. Wash. Oct. 28, 2011)(finding that ALJ did not err in giving greater weight to medical expert's opinion over treating psychiatrist's opinion concerning substance abuse).

The ALJ also gave significant weight to the opinions of two State Agency psychological review consultants, Dr. Edward Beatty and Dr. Renee Eisenhauer. (T at 32). In July of 2011, Dr. Beatty opined that Plaintiff was "[n]ot significantly limited" with regard to her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (T at 97-98). Dr. Beatty assessed moderate limitations with respect to maintaining attention and concentration for extended periods and carrying out detailed tasks. (T at 97-98). In November of 2011, Dr. Eisenhauer opined that Plaintiff had mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 108). "The opinion of a non-examining

physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it." *Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1190 (E.D.W.A. 2009)(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

In sum, the ALJ's RFC determination was supported by the assessments of Dr. Toews, an examining psychiatrist; Dr. Rubin, a medical expert who reviewed the record, testified at the administrative hearing, and was subjected to cross-examination by Plaintiff's counsel; and two State Agency review consultants. Plaintiff argues that the ALJ should have afforded greater weight to the more restrictive opinions provided by Dr. Islam-Zwart, Dr. Mabee, and Dr. Chandler. The ALJ discounted the opinions of Dr. Mabee and Dr. Chandler, finding them contradicted by the examination findings and other opinions of record (including those of Dr. Toews and Dr. Rubin). (T at 31-32). In addition, the ALJ noted that Dr. Chandler did not review Dr. Toews's assessment, even though it was rendered before her examination. (T at 31).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v.*

*Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's finding was supported by substantial evidence and should be sustained for the reasons outlined above.

With that said, this Court is troubled by the fact that the ALJ did not expressly discuss Dr. Islam-Zwart's opinion.   The ALJ said he considered Plaintiff's "complete medical history" (T at 22), but provided no specific discussion of Dr. Islam-Zwart's assessment. The Commissioner notes that Dr. Islam-Zwart's opinion was rendered in September 2009, which pre-dates the alleged onset date (July 1, 2010) and the application date (April 22, 2011).  The Commissioner points to Ninth Circuit precedent that "[m]edical opinions that predate the alleged onset date of disability are of limited relevance." *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008).   However, that precedent is certainly not a blanket endorsement for disregarding medical evidence.   In any event, evidence that pre-dates the alleged onset is more likely to have limited relevance when it is truly remote from the alleged onset date and/or "disability is allegedly caused by a discrete event." *See id.* Neither of those factors is present here.   Dr. Islam-Zwart's opinion pre-dates the

alleged onset date by just short of 10 months and Plaintiff's psychological struggles appear to be long-standings.

Under the circumstances, this Court has no hesitancy in concluding that the ALJ should have addressed Dr. Islam-Zwart's opinion.  However, such an error may be considered harmless if it was "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina v. Astrue*, 675 F.3d 1104, 1122 (9th Cir. 2012). Dr. Islam-Zwart's assessed marked limitations with regard to Plaintiff's ability to understand, remember, and follow complex instructions; relate appropriately to co-workers and supervisors; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior in a work setting, would not be considered inconsequential out of context. (T at 379).  However, the ALJ's RFC determination contains numerous non-exertional limitations that are generally consistent with these limitations.  For example, the ALJ found that Plaintiff was limited to superficial contact with the public and must work independently; needs a flexible and tolerant supervisor who sets goals (but not quotas) and provides hands-on training for work-setting changes; only occasional supervision of work product; no direct access to drugs or alcohol; no responsibility for the safety of others; no high stress work and no intense interaction with others or executive decisions; must be allowed to be off

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB

task 5% of the workday in small increments and be allowed to move at low average pace. (T at 26-27).

Moreover, as discussed above, the ALJ's determination was supported by substantial evidence in the record, including the assessments an examining psychiatrist (Dr. Toews), a medical expert (Dr. Rubin), and two State Agency review consultants (Dr. Beatty and Dr. Eisenhauer). *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment). Under the circumstances, this Court finds that the ALJ's failure to specifically address Dr. Islam-Zwart's opinion was error, but finds it to be harmless.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ afforded appropriate weight to the medical evidence, including the assessments of the examining medical providers and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering a decision that Plaintiff is not disabled. This Court finds no reversible error and

because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

## V. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No. 14, is DENIED.

The Commissioner's motion for summary judgment, Docket No. 16, is GRANTED.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Commissioner, and close this case.

DATED this 21st day of April, 2015.

                              /s/Victor E. Bianchini
                              VICTOR E. BIANCHINI
                              UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – CLOUSE v COLVIN 14-CV-00156-VEB